# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 5829 | **DATE** | 12/8/2004 |
| **CASE TITLE** | Bayer CropScience, Inc. vs. Limagrain Genetics Corp., Inc. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, defendant's motion to dismiss and compel arbitration is granted, and the plaintiff's cross motion to enjoin arbitration is denied. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | DEC 9 2004 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | 16 |
| | Copy to judge/magistrate judge. | | | |
| MF | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

U.S. DISTRICT COURT

2004 DEC -8 PM 3:00

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BAYER CROPSCIENCE, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 04 C 5829 |
| | ) |
| | ) Judge John W. Darrah |
| LIMAGRAIN GENETICS CORPORATION, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Bayer CropScience, Inc. filed a complaint against Limagrain Genetics Corporation, Inc.,
seeking declaratory (count I) and injunctive (count II) relief with respect to Limagrain's demand for
arbitration. Presently before the Court is Limagrain's Motion to Dismiss and/or Compel Arbitration,
and Bayer's Cross-Motion to Enjoin Arbitration.

### BACKGROUND

A reading of Bayer's Complaint supports the following summary of the alleged operative
conduct of the parties.

In 1988, Rhone-Poulenc, Inc. acquired Callahan Enterprises, Inc. ("CEI"). Bayer is the
successor-in-interest to Rhone-Poulenc. On June 30, 1994, Limagrain and Rhone-Poulenc executed
an Asset Purchase Agreement, in which Limagrain assumed all CEI rights and obligations, including
those under a 1986 contract that CEI had with Midwest Oilseeds, Inc. ("MOI"). The Agreement also
contained provisions regarding indemnification (Section 11) and arbitration (Section 9.1).

MOI sued Limigrain, in its capacity as successor in interest to CEI, and at the conclusion of
the trial, Limigrain was found liable to MOI for damages over $40 million resulting from

16

Limiagrain's breach of the 1986 contract. On or about June 28, 2004, after the judgment against Limagrain, Limagrain filed its Notice of Arbitration ("Notice") with the American Arbitration Association ("AAA") and served Bayer with the Notice.

In the Notice, Limagrain makes three claims against Bayer. First, Limigrain claims Bayer must indemnify Limagrain for some or all of Limagrain's liability in the lawsuit brought by MOI against Limagrain, pursuant to indemnification provision (Section 11.2) of the Agreement. Secondly, Limagrain claims that Bayer is liable for its predecessor's (Rhone-Poulenc) intentional or negligent failure to disclose certain information related to the 1986 contract between CEI and MOI to Limagrain prior to entering the Agreement ("wrongful inducement claim"). Lastly, Limagrain claims that Bayer is liable for damages to Limagrain's "reputation in the industry as a result of its dispute with MOI," and damages for the costs Limagrain will incur "in reconstituting its stock of unencumbered genetic material," because Limagrain's "'ownership' rights in germplasm and genetic material derived from MOI germplasm are, in effect, worthless."

Bayer claims that the arbitration provision of the Agreement does not cover Limagrain's wrongful inducement claim, nor does it cover the remaining claims for damages. Specifically, Bayer claims that Section 9.1 of the Agreement requiring arbitration, only applies to "any controversy or dispute under this Agreement." Accordingly, Bayer argues that Limagrain does not allege that its wrongful inducement and damages claims arise "under th[e] Agreement."[1]

_____

[1] Bayer alleges that Limagrain lays out four claims for indemnification in the Notice, although the Notice only lists three: 1. Indemnification; 2. Failure to Disclose ("wrongful inducment"; 3. Other Damages. Contrarily, Limagrain claims to only have alleged the first two claims. The Court will address the damages claims as a part of the wrongful inducement claims since the 'other damages' claim is merely the manifestation of the harm caused by the wrongful inducement.

## LEGAL STANDARD

In reviewing a motion to dismiss, the court considers all facts alleged in the complaint and any reasonable inferences drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). Dismissal is warranted if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The "suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." *Graehling v. Vill. Of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

Federal law favors arbitration as a means of resolving disputes. The Federal Arbitration Act ("FAA") provides that a "written provision in. . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has recognized that the FAA embodies a broad federal policy favoring arbitration. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 225-226 (1987). Section 4 of the FAA directs the court to issue an order compelling arbitration if either party fails, neglects, or refuses to comply with the arbitration agreement. 9 U.S.C. § 4. The FAA further "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract itself or an allegation of waiver, delay or a like defense to arbitrability."

## ANALYSIS

Bayer first argues that Limagrain's claims for wrongful inducement and for the other

damages are outside of the scope of the arbitration provision of the Agreement. Limagrain contends that they are within the scope of the Agreement because the claims arise "under the Agreement."

"In deciding whether a particular claim comes within the scope of an arbitration agreement, the focus is on the factual allegations of the complaint." *Goldberg v. Focus Affiliates, Inc.,* 152 F. Supp. 2d 978, 980 (N.D. Ill. 2001) (quoting *Schacht v. Hartford Fire Insurance Co.,* 1991 WL 171377 (N.D. Ill. 1991.). Generally speaking, "[a]n order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Welborn Clinic v. Medquist Incorporated,,* 301 F.3d 634, 639 (7th Cir. 2002)(quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582-583 (1960)). Indeed, "once it is clear the parties have a contract that provides for arbitration of some issue between them, any doubts concerning the scope of the arbitration clause are resolved in favor of arbitration." *Miller v. Flume,* 139 F.3d 1130, 1135 (7th Cir. 1998).

Claims of fraudulent or false inducement can be subject to arbitration under mandatory arbitration provisions. *See Melborn Clinic,* 301 F.3d at 641; *Goldberg,* 152 F.Supp.2d at 981. A court must look to the wording of the arbitration provision and determine if it is broad enough to include the particular claim. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403-404 (1967). For example, in *Goldberg,* the Court held that because the arbitration provision contained the phrase "under the terms of this Agreement," the provision was broad enough to include claims of fraudulent inducement.

Limagrain's wrongful inducement claim is within the scope of the arbitration clause. This issue was addressed in *Goldberg.* Limagrain is alleging a fraudulent or negligent failure to disclose

4

information, causing inducement into a contract with Bayer. Furthermore, Limagrain's damages claims in the Notice of Arbitration are results of the alleged wrongful inducement, and therefore also fall within the scope of the arbitration clause. In short, all of Limagrain's claims are within the scope of the arbitration agreement.

Next, Bayer claims that even if the wrongful inducement and damages claims are within the scope of the arbitration provision, the parties intended to exclude the issue of arbitrability from being submitted to arbitration, thus requiring the Court to decide the issue. Specifically, Bayer contends that the Agreement contained an integration provision at Section 12.10 that preempts the arbitration provision regarding any understanding or representation made prior to the Agreement. Accordingly, Bayer claims that this is sufficient evidence to indicate an intent of the parties to not arbitrate the wrongful inducement claims, and accordingly, the issue of its arbitrability is a question for the Court to answer. Contrarily, Limagrain argues that the issue of arbitrability of an issue is for the arbitrator to decide, pursuant to the rules of the AAA, which include Rule 7(a) of the Commercial Arbitration Rules and Mediation Procedures of the AAA. Rule 7(a) states that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement."

Whether an issue is subject to arbitration is a matter of contract interpretation under state law. *Welborn Clinic,* 301 F.3d at 639. In Illinois, state law requires the court to determine whether the parties objectively revealed an intent to submit the arbitrability issue to arbitration. *See Estate of Jesmer v. Rohlev,* 241 Ill.App.3d 798, 803 (1993). Despite a strong por-arbitration tilt, agreements must not be construed so broadly as to force arbitration of claims that the parties never agreed to submit to arbitration. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943 (1995).

Accordingly, courts should not assume that the parties agreed to arbitrate arbitrability unless there is "clear and unmistakable" evidence that they did so. *First Options*, 514 U.S. at 944. Evidence of the parties intent to arbitrate the issue of arbitrability can be found in the terms of the contract, such as in an integration clause. *See Bidlack v. Wheelabrator Corporation*, 993 F.2d 603, 608 (7th Cir. 1993) ("[T]he presence of such a clause is some indication of the parties' desire to limit a free-ranging judicial discretion to interpolate terms."). "It is a rule universally recognized that a written contract is the highest evidence of the terms of an agreement between the parties to it, and it is the duty of every contracting party to learn and know its contents before he signs it." *Bunge Corporation v. Williams*, 45 Ill.App.3d 359, 364 (Ill.App. 5th Dist. 1977). Finally, if evidence of intent does not exist, it is the Court's job to address arbitrability issues. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *Reliance Insurance Co. v. Raybestos Products Co.*, 382 F.3d 676, 678-679 (7th Cir. 2004).

The inclusion of the phrase "[t]he arbitration shall be conducted. . . in accordance with the prevailing commercial arbitration rules of the American Arbitration Association" in the arbitration provision of the Agreement is clear and unmistakable evidence that the issue of arbitrability is to be submitted to the arbitrator. To explain, Rule 7(a) of the Rules of the AAA state that the arbitrator shall determine his or her own jurisdiction over an issue. Furthermore, the parties are responsible for and bound by all terms they put into a contract. *Bunge Corporation*, 45 Ill.App.3d at 364. Accordingly, if Bayer did not intend to be bound by Rule 7(a) of the AAA, it should have stated such an exception in the Agreement.

Alternatively, even if the evidence was not clear and unmistakable in favor of an arbitrator determining issues of arbitrability, the Court cannot say with positive assurance that the provision

is not susceptible to an interpretation that a wrongful inducement claim is subject to mandatory arbitration. Accordingly, the broad scope of the arbitration provision of the Agreement embodies the issue of arbitrability for the same reasons as stated above. Therefore, the issue of arbitrability is to be determined by the arbitrator.

## CONCLUSION

For the reasons stated above, the Defendant's Motions to Dismiss and Compel Arbitration is granted, and the Plaintiff's Cross-Motion to Enjoin Arbitration is denied.

Dated: December 8, 2004

JOHN W. DARRAH
United States District Judge